## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ISAAC BRIGGS, aka JOSEF DUPREE, )
Inmate #B73562,                  )
                                 )
            Plaintiff,           )
                                 )
vs.                              )    CIVIL NO. 05-266-DRH
                                 )
PAMELA GRUBMAN, DR. CHAPMAN, )
MS. HOWIE, LINDA GOFORTH, *et al.*, )
                                 )
            Defendants.          )
                                 )

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

This action comes before the Court on Plaintiff's amended complaint.  Plaintiff originally filed this action in April 2005.  On November 21, 2005, the Court entered an order dismissing the action pursuant to 28 U.S.C. § 1915A.  The Court dismissed Counts 1, 3, and 4 with prejudice, but dismissed Count 2 without prejudice to Plaintiff's filing an amended complaint to specify by name the individuals responsible for violating his constitutional rights.  Plaintiff appealed the order, but on June 22, 2006, the Court of Appeals for the Seventh Circuit dismissed the appeal for failure to pay the required filing fee.  On September 7, 2006, Plaintiff filed a motion seeking to amend the original complaint to name the individuals responsible for violating his constitutional rights.  The Court granted that motion and the amended complaint was filed on October 24, 2006.

This case is now before the Court for a preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a

prisoner seeks redress from a governmental entity or officer or employee of a
governmental entity.
(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims
or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief
> may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such
> relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any

supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions

of this action are legally frivolous and thus subject to summary dismissal.

To facilitate the orderly management of future proceedings in this case, and in accordance

with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate

to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as

shown below.  The parties and the Court will use these designations in all future pleadings and

orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts

does not constitute an opinion as to their merit.

COUNT 1:    Against Defendants Bush, Heinrich, Middendorf, Moore, Murray, Miller,
Anderson, Meek, and Walker for violations of due process.

COUNT 2:    Against Defendant Bush for unconstitutional retaliation and against
Defendants Dixon, Wilson, Tovar, Albert, Purtle, McAdory, Miller,
Anderson, Meek, Walker, Middendorf, Moore, Murray, Forsting, and
Heinrich, for violations of due process.

COUNT 3:    Against Defendants Hess, Mifflin, McDaniel, Mitchell, Scott, Spiller,
Cowan, Owens, Forsting, Middendorf, Moore, Murray, McAdory, Miller,
Anderson, Meek, and Walker for violations of due process.

COUNT 4:    Against Defendants Schorn, Korando, Wilson, Scott, Cowan, McAdory,
Owens, Middendorf, Anderson, and Walker for violations of due process.

**COUNT 5:**    Against Defendants Bearden, Morris, Wilson, Scott, Spiller, Korando, Pitts, Middendorf, Moore, Murray, Owens, Forsting, McAdory, Anderson, and Walker for violations of due process.

**COUNT 6:**    Against Defendant Henry for confiscating Plaintiff's state identification card, causing him to be charged for a new one, and against Defendants Owens, Middendorf, McAdory, Anderson, and Walker for ignoring his grievances.

**COUNT 7:**    Against Defendants Ward, Morris, Wilson, Tovar, Schwartz, Wine, Martin, Hinsley, Murray, Uchtman, Anderson, Miller, Walker, and Meek for violations of due process.

**COUNT 8:**    Against Defendants Ellis, Hale, Wilson, Locke, Schwartz, Middendorf, Murray, Moore, Uchtman, Miller, Anderson, Meek, Walker, Maue, Korando, and Pitts for violations of due process.

**COUNT 9:**    Against unspecified defendants for forcing Plaintiff to submit to the taking of a DNA sample.

**COUNT 10:**   Against Defendants Metaggart, Leurs, Broshears, Vasquez, Ucthman, Wine, Spiller, Cowan, Middendorf, Moore, Murray, Owens, Forsting, Miller, Anderson, Meek, and Walker for violations of due process.

**COUNT 11:**   Against unspecified defendants for transferring him to another facility without his consent.

**COUNT 12:**   Against Defendants Grant, Peek, Grace, Fernandez, Stewart, Green, Hartman, Carriker, Sanders, Pursell, Blades, Cleland, Kisro, Bartley, Miller, Anderson, Meek and Walker for violations of due process.

**COUNT 13:**   Against Defendants Rennison, Crow, Bebout, and Hubler for violations of due process.

**COUNT 14:**   Against Defendants Grubman and Chapman for refusing to treat his dental condition.

**COUNT 15:**   Against Defendants Wexford Health, Howie, and Goforth, for deliberate indifference to his serious medical needs.

**COUNT 16:**   Against the Immigration and Naturalization Service under the Federal Tort Claims Act.

**COUNT 1**

- 3 -

On July 6, 2003, Defendant Bush closed the door to the wing, preventing Plaintiff from going to lunch. Plaintiff filed a number of grievances regarding the incident, but the grievances were not properly investigated by Defendants Heinrich, Middendorf, Moore, Murray, Miller, Anderson, Meek, and Walker.

To establish a violation of the Eighth Amendment, a prisoner must prove two elements: (1) the deprivation alleged is sufficiently serious such that it resulted in the "denial of the minimal civilized measure of life's necessities" and (2) prison officials knew of a substantial risk to the prisoner but failed to take reasonable steps to prevent the harm from occurring. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In some circumstances, a prisoner's claim that he was denied food may satisfy the first element but, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ( it would be an Eighth Amendment violation to deny a prisoner of an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation; *Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health."); *Robbins v. South*, 595 F.Supp. 785, 789 (D.Mont. 1984)

- 4 -

(requiring inmate to eat his meals in less than 15 minutes does not amount to cruel and unusual punishment). Plaintiff here missed one meal, but he was does not allege harm to his health; his claims therefore do not rise to the level of a constitutional violation.

As to Plaintiff's claims that his grievances were not properly responded to, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Consequently, Plaintiff has failed to state a claim under either of these legal theories; Count 1 is **DISMISSED** from the action with prejudice.

### COUNT 2

Plaintiff states that as a result of the grievances filed about the events described in Count 1, Defendant Bush wanted to retaliate against him. Plaintiff, however, does not describe any retaliatory acts taken by Defendant Bush. On July 16, 2003, Defendant Dixon wrote a false disciplinary report against Plaintiff for not pairing off in line. At a subsequent hearing, Defendants Wilson and Tovar found Plaintiff guilty of the offense and disciplined him with two months segregation, two months loss of commissary, two months loss of yard privileges, and a two-month demotion to c-grade. Plaintiff was also transferred from Menard medium security segregation to Menard maximum security segregation. Plaintiff states that Defendants Albert, Purtle, and McAdory affirmed the disciplinary action. Defendants Miller, Anderson, Meek, Walker, Middendorf, Moore, Murray, Forsting, and Heinrich did not properly investigate the matter.

*Retaliation*

Plaintiff first states that Defendant Bush wanted to retaliate against him. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Based on these legal standards, Plaintiff's retaliation claim against Defendant Bush fails because Plaintiff has not stated how Bush retaliated. He states that Bush "wanted to retaliate" against Plaintiff. Then he states "this prompted the incident of July 16, 2003." Defendant Bush is not named in the events describing the July 16 incident. Thus, Plaintiff has not shown that Defendant Bush retaliated against him and has therefore failed to state a claim.

*Due Process*

Second, Plaintiff contests the disciplinary proceedings that followed the retaliatory disciplinary report. When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more

- 6 -

restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for two months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Plaintiff's due process claim is without merit.

Plaintiff also claims that he was demoted to c-grade, denied commissary privilege, and denied yard access for two months. However, these allegations do not present a viable constitutional claim. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

Finally, Plaintiff states that he was transferred from medium security to maximum security. Classifications of inmates implicate neither liberty nor property interests. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Meachum v. Fano*, 427 U.S. 215 (1976). Therefore, plaintiff has no constitutional right to a particular security classification. *Moody v. Daggett*, 429 U.S. 78, 88 & n. 9 (1976). If the state elected to recognize such a right, then he would have an enforceable claim under the Fourteenth

Amendment. *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir.1991). However, plaintiff does not allege that the state has created a right to a particular security classification, and the Court is not aware of any such right.  Based on these legal standards and Plaintiff's allegations, Plaintiff has not stated a claim on these facts.  Accordingly, Count 2 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 3

On September 16, 2003, Plaintiff was attacked in the shower by another inmate.  Defendants Hess, Mifflin, and McDaniel wrote a disciplinary report charging Plaintiff with fighting.  At a subsequent disciplinary hearing, Defendants Mitchell and Scott found Plaintiff guilty of the charges and disciplined him with one month in segregation, a one-month loss of commissary privileges, a one-month loss of yard privileges, and one-month demotion to c-grade.  Defendants Spiller and Cowan affirmed the disciplinary measure.  Plaintiff filed grievances, but they were not properly investigated by Defendants Owens, Forsting, Middendorf, Moore, Murray, McAdory, Miller, Anderson, Meek, or Walker.

As stated above, when a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Plaintiff's allegations of one-month in segregation, loss of commissary and yard privileges, and a one-month demotion to c-grade do not implicate liberty interests under the Due Process clause. Plaintiff also has no liberty interest in the state's grievance procedures.  Accordingly, Count 3 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 4

On February 4, 2004, Defendants Schorn and Korando wrote Plaintiff a disciplinary report for possession of pornographic material. The Adjustment Committee (Defendants Wilson and Scott) found Plaintiff guilty and disciplined him with a one-month loss of commissary, a one-month loss of library, and a one-month demotion to c-grade. Defendants Cowan, mcAdory, Owens, Middendorf, Anderson, and Walker failed to properly investigate the incident.

These disciplinary measures do not implicate a cognizable liberty interest. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). Further, as stated in Count 1 above, Plaintiff has no liberty interest in the state's grievance procedure. Consequently, Count 4 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 5

On February 7, 2004, Defendants Bearden and Morris wrote Plaintiff a disciplinary report for possession of contraband. Defendants Wilson and Scott found Plaintiff guilty of the charges and disciplined him with two months in segregation, a two-month loss of commissary, and a two-month demotion to c-grade. Defendants Spiller, Korando, and Pitts authorized Plaintiff's confinement in segregation. Defendants Middendorf, Moore, Murray, Owens, Forsting, McAdory, Anderson, and Walker failed to properly investigate Plaintiff's grievances on the matter.

As stated above, none of these disciplinary measures implicate a liberty interest protected by the Due Process clause, nor does the failure to respond to grievances. Accordingly, Count 5 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 6

On January 29, 2004, Defendant Henry confiscated Plaintiff's state identification card.

- 9 -

Plaintiff was charged $5 for a new card.  Plaintiff states that the "incident" of January 29 "exceeds the institutional annual appearance update schedule" and that Plaintiff should not have been charged for a new identification card.  Plaintiff was charged $5 again on January 14, 2005, for a new state identification card.  Plaintiff wrote grievances regarding this charge, but the grievances were ignored by Defendants Owens, Middendorf, McAdory, Anderson, and Walker.

Plaintiff appears to be complaining that he was charged in violation of state law.  A federal court, however, does not enforce state law and regulations.  *See Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) ("The federal government is not the enforcer of state law").

As to the ignored grievances, the Court again notes, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause."  *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995).  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).  Consequently, Plaintiff has failed to state a claim under either of these legal theories; Count 6 is **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915A.

## COUNT 7

On October 3, 2004, Defendants Ward and Morris wrote Plaintiff a disciplinary report for attempting to mail another inmate's mail on his way to lunch.  Plaintiff states that he did not go to lunch on that day.  At a subsequent disciplinary hearing on October 6, 2004, Defendants Wilson and Tovar found Plaintiff guilty of the charge and disciplined him with two months in segregation, a two month demotion to c-grade, and a one-month loss of yard privileges.  Plaintiff states that there were

procedural irregularities at the hearing in that the committee had not viewed the video-camera surveillance tapes that would have shown that Plaintiff did not go to lunch that day.   Further, different witnesses were listed on the shakedown/confiscation sheet and the disciplinary report. After the hearing, Defendants Schwartz, Wine, Martin, Hinsley, Murray, Uchtman, Anderson, Miller, Walker, and Meek failed to independently investigate the incident and "agreed with" the sanctions imposed.

As stated above, none of these disciplinary measures, nor the grievance process implicates a liberty interest protected by the Due Process clause.   Accordingly, Count 7 is **DISMISSED** from the action with prejudice.   *See* 28 U.S.C. § 1915A.

## COUNT 8

On January 14, 2005, Defendants Ellis and Hale wrote Plaintiff two disciplinary reports for unauthorized movement and trading and trafficking.   At a subsequent hearing, Plaintiff was found guilty by Defendants Wilson and Locke and disciplined with two months in segregation, a two-month loss of commissary, a two-month demotion to c-grade, and a one-month loss of yard privileges.   Plaintiff states that Defendants Schwartz, Middendorf, Murray, Moore, and Uchtman did not properly investigate the charges, nor did Defendants Miller, Anderson, Meek, Walker, Maue, Korando, and Pitts.   None of these disciplinary measures implicate a liberty interest protected by the Due Process clause.   Accordingly, Count 8 is **DISMISSED** from the action with prejudice.   *See* 28 U.S.C. § 1915A.

## COUNT 9

On January 14, 2005, Plaintiff was forced to submit a DNA sample "in violation of state law."   Plaintiff does not assert which state law the DNA testing violated.   The Court notes, however,

that the Seventh Circuit has upheld as constitutional state collection of inmate DNA samples. *See Gilbert v. Peters*, 55 F.3d 237, 238-39 (7th Cir. 1995) (holding that requiring prisoners convicted prior to enactment of statute to comply with its terms does not violate Ex Post Facto clause); *Green v. Berge*, 354 F.3d 675, 677-78 (7th Cir. 2004) (holding Wisconsin statute requiring all incarcerated felons to provide DNA samples for state data bank does not violate Fourth Amendment under "special needs" doctrine). Accordingly, this claim is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## COUNT 10

On April 20, 2005, Defendants Metaggart and Leurs filed a disciplinary report charging Plaintiff with providing "false information." At a subsequent hearing on April 22, 2005, Plaintiff was found guilty and disciplined with one month in segregation, a one-month loss of commissary, and a one-month demotion to c-grade. Plaintiff states that Defendants Broshears, Vasquez, Uchtman, Wine, Spiller, Cowan, Middendorf, Moore, Murray, Owens, Forsting, Miller, Anderson, Meek, and Walker "failed to effectuate an independent determination" of the incident. None of these disciplinary measures implicate a liberty interest protected by the Due Process clause, nor does the failure to follow grievance procedures. Accordingly, Count 10 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## COUNT 11

On May 20, 2005, Plaintiff sought protective custody when he was housed with a former cellmate of an inmate who had previously assaulted him. Plaintiff's request for protective custody was denied. Plaintiff appealed that decision to Illinois Department of Corrections officials, but "instead of honoring Briggs' appeal's process, Briggs was shipped to the Pinckneyville Correctional

Center and placed in population without his consent."

"[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the constitution does not guarantee placement in a particular prison).  Consequently, Plaintiff has failed to state a claim on these facts; Count 11 is **DISMISSED** from the action withe prejudice.  *See* 28 U.S.C. § 1915A.

## COUNT 12

On June 10, 2006, Defendants Grant and Peek wrote a disciplinary report charging Plaintiff with possession of contraband.  Defendants Grace and Fernandez did not present the contraband as evidence at the subsequent hearing, and Plaintiff's witnesses were not called, but Plaintiff was found guilty anyway and disciplined with one month in segregation and a one-month demotion to c-grade. Plaintiff states that Defendants Stewart and Green knew that the contraband was not Plaintiff's but did nothing to prevent the finding of guilt.  Defendants Hartman, Carriker, Sanders, Pursell, Blades, Cleland, Kisro, Bartley, Miller, Anderson, Meek, and Walker did not investigate the charges.

None of these disciplinary measures implicate a liberty interest protected by the Due Process clause, nor does the failure to follow grievance procedures.  Accordingly, Count 12 is **DISMISSED** from the action with prejudice.  *See* 28 U.S.C. § 1915A.

## COUNT 13

On September 2, 2006, Defendants Rennison and Crow wrote a disciplinary report charging Plaintiff with forging a document and giving false information.  Defendants Bebout and Hubler placed Plaintiff in segregation pending a hearing.  At the time of the filing of the amended

complaint, Plaintiff has not had a hearing on the charges, but remained in segregation.

As stated above, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). No liberty interest is implicated in Plaintiff's confinement in segregation. Accordingly, Count 13 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## COUNT 14

Plaintiff did not receive dental treatment at Pinckneyville. He grieved the issue and received a response from Defendant Grubman stating that "dental treatment is based on Mr. Chapman's clinical judgment." Plaintiff states that Defendant Chapman has improperly refused to treat Plaintiff's "dental condition of missing crowns to his upper four front teeth."

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official

- 14 -

must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm....  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm.  The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough

proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates." *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Based on these legal standards, Plaintiff's claim of deliberate indifference against Defendants Grubman and Chapman cannot be dismissed at this point in the litigation.

## COUNT 15

Plaintiff states that Defendant Wexford Health improperly treated an infection that ultimately required emergency surgery in December of 2003. Plaintiff feared that his right leg was in jeopardy of amputation. Plaintiff states that Defendants Howie and Goforth "failed to seek adequate adjudication of this medical issue."

Plaintiff does not allege sufficient facts for the Court to determine whether he has stated a claim of deliberate indifference to his serious medical needs. But at this point in the litigation, the Court must take as true all of Plaintiff's allegations, even the vague ones. Accordingly, Plaintiff may proceed against Defendants Howie and Goforth on this deliberate indifference claim. Wexford Health, however, must be dismissed as a defendant from this claim. The Seventh Circuit has held that a corporate entity violates an inmate's constitutional rights, in this case deliberate indifference to Plaintiff's serious medical needs, only when it has a policy that creates conditions that infringe upon an inmate's constitutional rights. *See Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff has not alleged that it was any policy or practice of Wexford

Health to delay medical treatment of infections.  Accordingly, Plaintiff may proceed on Count 15 against Defendants Howie and Goforth.  Wexford Health is **DISMISSED** as a defendant.

### COUNT 16

Plaintiff attempts to bring a claim under the Federal Tort Claims Act against the Immigration and Naturalization Service ("INS") for "hindering him and his wife and son from appropriate progress as an American family."  Plaintiff states that he filed a claim with the INS and received a response in March 2006 "attempting to defer responsibility of Briggs' concerns upon its affiliate known as the Homeland Security Agency of I.N.S.  This Briggs deems as non-responsive and evasive."

Suits against the United States under the Federal Tort Claims Act ("FTCA") must first be presented to the federal agency responsible for the injury.  *Id.*  Under the act,

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).  Plaintiffs bringing claims under the FTCA generally show exhaustion by filing with their complaint a copy of the "final denial of claim" letter indicating that agency review has been completed and the individual may seek relief in court.  Plaintiff does state that he filed a claim with the INS, but that the response he received in March 2006 was "non-responsive and evasive" because the letter indicated that the claim would be considered by the Department of Homeland Security.  Plaintiff should not have construed the letter as evasive and non-responsive.  The

- 17 -

Homeland Security Act of 2002, 6 U.S.C. § 101, *et seq*., abolished the INS.  All functions formerly served by the INS were transferred to the Department of Homeland Security.  *See* 6 U.S.C. § 202 (transferring responsibilities), and § 291 (abolishing INS).  Because Plaintiff has not yet exhausted his administrative remedies, he cannot now bring his FTCA claim.  Accordingly, Count 16 is **DISMISSED** from the action without prejudice to Plaintiff's filing a future FTCA claim in a separate action after he has exhausted his administrative remedies.

### DISPOSITION

Plaintiff may proceed against Defendants Grubman and Chapman on the deliberate indifference claim in Count 14; and against Defendants Howie and Goforth in Count 15.  All other claims and defendants are **DISMISSED** from the action.

**IT IS HEREBY ORDERED** that Plaintiff shall complete and submit a USM-285 form for ***Defendants Grubman, Chapman, Howie, and Goforth*** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order.  The Clerk is **DIRECTED** to send Plaintiff **4** USM-285 forms with Plaintiff's copy of this Memorandum and Order.  **<u>Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.</u>**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for ***Defendants Grubman, Chapman, Howie, and Goforth***.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

- 18 -

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants Grubman, Chapman, Howie, and Goforth*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting

- 19 -

service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED:  November 6, 2006**

/s/   David   RHerndon
**DISTRICT JUDGE**